RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1323-16T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

L.B.S.,

 Defendant-Appellant,

and

R.L.G.,

 Defendant.
______________________________

IN THE MATTER OF THE
GUARDIANSHIP OF I.D.A.L.G.,

 Minor.e
______________________________

 Submitted September 18, 2017 – Decided October 13, 2017

 Before Judges Sabatino and Whipple.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex County,
 Docket No. FG-07-0136-15.
 Joseph E. Krakora, Public Defender, attorney
 for appellant (Catherine Reid, Designated
 Counsel, on the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Mary
 L. Harpster, Deputy Attorney General, on the
 brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Lisa M. Black,
 Designated Counsel, on the brief).

PER CURIAM

 Defendant L.B.S., the mother of I.D.A.L.G. (Ivan1), appealed

the Family Part's June 16, 2015, final judgment terminating her

parental rights after a guardianship trial. On October 19, 2016,

we affirmed the trial court as to prongs one and two of N.J.S.A.

30:4C-15.1(a)(1) and (2), but remanded for further proceedings as

to prongs three and four, N.J.S.A. 30:4C-15.1(a)(3) and (4), in

light of Ivan's February 2016, removal from the resource home

where he resided at the time of trial and his placement with his

paternal grandmother. N.J. Div. of Child Protection & Permanency

v. L.B.S. & R.L.G., No. A-4845-14T2 and A-4846-14T2 (App. Div.

Oct. 19, 2016). We have outlined the relevant facts in our earlier

opinion and need not repeat them here.

1
 We use a pseudonym to protect the child's identity and for ease
of reference.

 2 A-1323-16T3
 We briefly discuss the facts applicable to the present appeal.

Ivan was initially placed with his paternal grandmother, while

defendant sought treatment for substance abuse. In January 2014,

the Division of Child Protection and Permanency (the Division)

removed Ivan from the grandmother's home because she had been

substantiated for abuse and neglect in 1987. Ivan was then placed

in a resource home, where he stayed throughout the trial. In

September 2014, the Division ruled out the grandmother as a

relative placement for Ivan because of her prior substantiation,

but she successfully administratively appealed the substantiation.

However, at the time of trial, the grandmother had not yet

completed the parenting classes required to be licensed as a

qualified foster home, so Ivan remained in the resource home.

 At the June 2015, termination hearing, the trial judge found

it in Ivan's best interest to remain with the resource home that

committed to adopting him. During defendant's appeal, we learned

Ivan was removed from the resource home in February 2016 and placed

with the grandmother, where he remains.

 At defendant's initial appeal, the record was incomplete as

to whether the grandmother wanted to adopt Ivan or maintain a

Kinship Legal Guardianship (KLG) arrangement with one or both

parents. We therefore affirmed the trial court's findings with

respect to prongs one and two, but vacated without prejudice as

 3 A-1323-16T3
to prongs three and four and remanded for further proceedings on

those questions. We were not convinced the record supported the

assertion that the grandmother was adequately informed of the

difference between KLG and adoption. We also expressed concern

the trial judge had misapplied the law in his determination that

KLG was an unavailable option because Ivan was adoptable. One

option does not necessarily foreclose the other, therefore, we

asked the trial judge on remand to explore the KLG option with the

grandmother.

 The Family Part conducted a hearing on November 15, 2016, and

considered testimony from the Division and the grandmother. The

judge ultimately determined the grandmother was fully committed

to adoption, and according to the Division, Ivan was adoptable.

Therefore, KLG was not "appropriate, reasonable [or] available."

This appeal followed.

 On appeal, defendant argues the trial court did not carry out

the mandate of the remand order because it failed to insure the

grandmother's options were fully explained and examined, and it

again misapplied the standard for consideration of KLG. We

disagree.

 "It is beyond dispute that a trial judge has the

responsibility to comply with pronouncements of an appellate

court." Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div.

 4 A-1323-16T3
2003), certif. denied, 179 N.J. 310 (2004). While the trial court

may disagree with our decision, it must still comply. Id. at 233.

 Having reviewed the transcript, we are satisfied the trial

judge complied with our prior opinion. In it, we directed the

trial court to explain, on the record, the options available to

the grandmother with respect to adoption of Ivan or a KLG

arrangement, and to explore these options with counsel present.

The differences between adoption and KLG were read to the

grandmother on the record, and we are satisfied she understood the

differences. The grandmother unequivocally stated she wished to

adopt Ivan. She also said she was never coerced by the Division

into agreeing to adopt Ivan, she spoke to the Division regarding

the differences between adoption and KLG, and she signed a form

stating she wished to adopt Ivan. The grandmother testified she

would like her son to regain his parental rights, however, she

also testified she would have allowed both defendant and Ivan's

father to visit but both needed to get their lives together.

 At the conclusion of the hearing, the judge found the

grandmother "clearly indicated that she is committed to adoption

and that is what she is willing to do." Additionally, the judge

noted that the present case was not one where KLG was "appropriate,

reasonable, [or] available." We defer to the trial court's factual

findings as the judge "has the opportunity to make first-hand

 5 A-1323-16T3
credibility judgments about the witnesses who appear on the stand."

N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104

(2008). Based upon the record before us, we are satisfied the

trial judge followed our remand instructions. The Division's

attorney discussed the differences between adoption and KLG on the

record, and counsel for the parties was able to question the

grandmother's understanding. The judge asked the appropriate

follow-up questions, and the grandmother unequivocally stated her

wishes to adopt Ivan. The grandmother's statements, coupled with

the trial judge's findings, demonstrate the grandmother

sufficiently understood the differences between adoption and KLG

to satisfy our remand instruction.

 Defendant argues the record does not support a finding that

the grandmother made an unequivocal commitment to adoption and the

trial judge erred in terminating parental rights because KLG was

not "available" or "appropriate." We disagree.

 Where adoption of a child is "neither feasible nor likely[,]"

the Division should consider KLG, which does not require the

termination of parental rights. N.J.S.A. 3B:12A-1(b). The birth

parent would retain the right to consent to adoption, change the

child's name, visit the child, and be obligated to pay child

support. N.J. Div. of Youth & Family Servs. v. D.H., 398 N.J.

 6 A-1323-16T3
Super. 333, 341 (App. Div. 2008). To appoint a Kinship Legal

Guardian, the court must find by clear and convincing evidence:

 (1) each parent's incapacity is of such a
 serious nature as to demonstrate that the
 parents are unable, unavailable or unwilling
 to perform the regular and expected functions
 of care and support of the child;

 (2) the parents' inability to perform those
 functions is unlikely to change in the
 foreseeable future;

 (3) in cases in which the [D]ivision is
 involved with the child . . . (a) the
 [D]ivision exercised reasonable efforts to
 reunify the child with the birth parents and
 these reunification efforts have proven
 unsuccessful or unnecessary; and (b) adoption
 of the child is neither feasible nor likely;
 and

 (4) awarding [KLG] is in the child's best
 interests.

 [N.J.S.A. 3B:12A-6(d).]

 In addition, our Court has recognized that KLG is "not meant

to be a substitute for the permanency of adoption but, rather, to

provide as much permanency as possible when adoption is not

feasible or likely and a relative is willing to care for the

child." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494,

510 (2004). If a child is adoptable, "KLG cannot be used to defend

against termination of parental rights." D.H., supra, 398 N.J.

Super. at 341. Additionally, "[w]hen a caretaker 'unequivocally'

asserts a desire to adopt, the statutory requirement that adoption

 7 A-1323-16T3
is neither feasible nor likely is not satisfied." N.J. Div. of

Youth & Family Servs. v. H.R., 431 N.J. Super. 212, 231 (App. Div.

2013) (citation omitted). "There is no statutory authority that

establishes any burden a caregiver who wants to adopt must meet

in rejecting KLG." N.J. Div. of Youth & Family Servs. v. T.I.,

423 N.J. Super. 127, 137 (App. Div. 2011). Where adoption is

feasible or likely, there is "no need to determine whether KLG was

in the best interest of" the child. Ibid.

 We have found adoption appropriate, rather than KLG, where

the child has been in the custody of the caretaker for quite some

time, the caretaker is committed to adoption, and the differences

between KLG and adoption have been explained. See T.I., supra,

423 N.J. Super. at 136. However, we have reversed permanency

orders terminating parental rights where a caretaker was

misinformed a child was ineligible for KLG because of the child's

age, see H.R., supra, 431 N.J. Super. at 232-33, or where the

trial judge incorrectly found KLG to be unavailable as a permanency

plan. See D.H., supra, 398 N.J. Super. at 335, 342.

 Here, the grandmother was committed to the adoption of Ivan.

Based upon our review of the record, the grandmother understood

the differences between adoption and KLG.

 8 A-1323-16T3
 Defendant also argues the trial court's finding that

termination will not do more harm than good is unsupported by

substantial credible evidence in the record. We disagree.

 To satisfy the fourth prong, the Division must prove by clear

and convincing evidence that "[t]ermination of parental rights

will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The

court must determine "whether a child's interest will be best

served by completely terminating the child's relationship with

that parent." E.P., supra, 196 N.J. at 108. "The crux of the

fourth statutory subpart is the child's need for a permanent and

stable home, along with a defined parent-child relationship."

H.R., supra, 431 N.J. Super. at 226 (citation omitted). Where the

child is living with foster parents, the court balances the

relationship of the child with both the biological and foster

parents. In re Guardianship of K.H.O., 161 N.J. 337, 355 (1999).

The question is not whether the child will suffer any harm; rather,

it is whether "the child will suffer a greater harm from the

termination of ties with her natural parents than from the

permanent disruption of her relationship with her foster parents."

Ibid. The answer to that question requires expert inquiry as to

the strength of each relationship. Ibid.

 Based upon a review of the record of the remand hearing,

there was sufficient credible evidence that termination will not

 9 A-1323-16T3
do more harm than good. The grandmother has been caring for Ivan,

confirmed her wish to adopt him, and recognized defendant and the

grandmother's son had no capacity to properly care for Ivan. The

child needs stability, which he would receive through adoption by

the grandmother. Moreover, the grandmother testified neither

parent had visited Ivan since the time of the initial appeal.

Therefore, the Division has satisfied its burden of establishing

termination will not do more harm than good.

 Affirmed.

 10 A-1323-16T3